# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIONEL MCDAVID, | ) |
| Claimant, | ) No. 15 C 8829 |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Lionel McDavid ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. (ECF No. 17.) Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. (ECF No. 12.) For the reasons stated below, Claimant's motion for summary judgement is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On March 21, 2013, Claimant filed an application for DIB (R. 196–97), and on April 1, 2013, Claimant filed an application for SSI, both alleging a disability onset date of March 31, 2011. (R. 198–203.) The claim was denied initially on September 13, 2013 (R. 125–28), and upon reconsideration on May 22, 2014. (R. 122–123.) On July 8, 2014, Claimant requested a

hearing before an Administrative Law Judge ("ALJ") (R. 141-42), which was held on February 26, 2015. (R. 38–69.) At that hearing, Claimant, who was represented by counsel, testified via video teleconference. (*Id.*) A vocational expert (the "VE") also appeared and testified. (*Id.*)

On March 23, 2015 the ALJ issued a written decision. (R. 13–29.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Act. (R. 29.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since March 31, 2011, the alleged onset date. (R. 18.) At step two, the ALJ found that Claimant had the severe impairments of rotator cuff tendinosis and impingement syndrome in his left shoulder and tendonitis in his left land. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 22.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to only frequently using his left upper extremity to push/pull or reach overhead. (R. 24.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 28.) Specifically, the ALJ found that Claimant could work as a bus driver, janitor, or truck driver. (*Id.*) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 29.)

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited

2

to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ANALYSIS

Claimant asserts that the ALJ's decision must be reversed because the ALJ: (1) erred when she proceeded with the video teleconference hearing despite Claimant's objection; (2) failed to identify the evidentiary basis that supported her assessment of Claimant's RFC; (3) failed to properly assess his credibility; and (4) committed legal error at Step Four of the adjudication process because she failed to support her finding that Claimant was capable of past relevant work. As discussed below, the Court finds that the ALJ erred when she determined that Claimant could perform work at all exertional levels because no opining source stated he could work at such a level. Because this conclusion requires remand, the Court will address only that issue and the first issue concerning the video teleconference. It need not address the other alleged errors made by the ALJ.

A. **The ALJ Erred By Not Providing For Claimant To Appear In-Person At The Hearing**

20 C.F.R. § 416.1429 provides that a claimant "may appear" at a hearing "in person, by video teleconferencing, or, under extraordinary circumstances, by telephone." 20 C.F.R. § 416.1429. The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), a non-binding guide that courts look to "as a guide for procedural rules" in social security cases, *DiRosa v. Astrue*, 2012 WL 2885112, at *5 (N.D. Ill. July 13, 2012), explains the process for selecting among the two more common methods of appearance.[1] According to HALLEX, the Commissioner will give a claimant "the opportunity to object to appearing at a hearing by [video teleconference] ("VTC") in the acknowledgement of the request for a hearing." HALLEXX I-2-3-12(A)(2), 2014 WL 4348272, at *1. If a claimant objects in a timely fashion, then the ALJ "must approve" that objection. HALLEX I-2-3-10(A)(1), 1994 WL

---

[1] In this case, no party disputes that HALLEX provides relevant guidance for the Court's analysis.

4

1552640. That means the ALJ must "schedule [the] claimant to appear in person," assuming he or she has not "changed his or her residence while the request for hearing is pending." HALLEX I-2-3-10(A)(1)(a), 1994 WL 1552640.

On October 17, 2014, the SSA sent Claimant a letter informing him that his appearance might be scheduled by VTC and that he must object within 30 days of receiving the letter if he wanted to appear in person. (R. 152.) The letter included a form that Claimant could fill out and return to the SSA to object. (R. 155.) Claimant filled out the form on November 14, 2014, and the SSA received it by November 17, 2014. (R. 159.) The ALJ, however, never did anything about Claimant's objection; that is, he did not schedule Claimant for an in-person hearing or address the issue in any manner. The Commissioner concedes that Claimant properly objected to appearing by VTC, (ECF No. 25, at 3), and does not contest that the ALJ erred by failing to address the objection. Instead, the Commissioner argues that this error does not merit remand for two reasons.[2]

The first is that the error relates to the scheduling and conducting of a hearing, which, the Commissioner contends, is beyond the scope of judicial review under 42 U.S.C. § 405(g). The Commissioner does not cite any case law that supports this position. Instead, the Commissioner asserts in a conclusory manner that the issue is beyond the scope of judicial review and then cites the statute. The statute, however, provides for judicial review of questions "of conformity with" Social Security Regulations. 42 U.S.C. § 405(g). As described above, it is such a regulation that gave Claimant the option to appear in person. The fact that HALLEX provides guidance as to how the regulation should be applied does not change the fact that it is the regulation that

---

[2] The Commissioner also mentions in passing that Claimant failed to object again at the hearing when he appeared by VTC. The Commissioner does not argue, though, that this constitutes a waiver. And the Commissioner does not explain why Claimant had to object twice before the same ALJ. It is undisputed that Claimant again raised the VTC issue in front of the Appeals Council.

5

underlies Claimant's argument. Consistent with this understanding of the law, other courts have reached the merits of whether an ALJ improperly dealt with an objection to appearing by VTC. *See, e.g., Garcia v. Colvin*, 2015 WL 2384172, at *11 (S.D. Cal. May 18, 2015); *Scott v. Comm'r Soc. Sec.*, 2014 WL 1340075, at *8 (D. Md. Apr. 2, 2014); *Pittman v. Colvin*, 2013 WL 4539674, at *2 (M.D. Ga. Aug. 27, 2013). Therefore, the Court finds that this issue is not beyond the scope of judicial review.

The Commissioner's second argument is that the ALJ's error was harmless. The record undermines this argument. When considering Claimant's credibility, the ALJ stated, "When [Claimant] presented to the hearing, he was carrying a briefcase in one hand and had his coat over the opposite arm. He was observed walking with no apparent difficulty. He did not appear to have any problems with his balance or need to hold onto a chair or table for support." (R. 25.) Claimant points out, and the Commissioner does not refute, that the person who was carrying a briefcase and a coat at the hearing was not Claimant, but, rather, Claimant's attorney. That means that, because of the VTC hearing, the ALJ considered his observations of Claimant's attorney when assessing Claimant's credibility. Because the attorney demonstrated a physical ability greater than that claimed by Claimant, this mistake negatively impacted the ALJ's assessment of Claimant's credibility.

The Commissioner's harmless error argument essentially misunderstands the relevant standard. The Commissioner contends that the error is harmless because substantial evidence supports the ALJ's decision. The Seventh Circuit, however, has explained that "[t]he only situations in which an error in the factors considered by the trier of fact in making a credibility determination can confidently be thought harmless are when a contrary determination would have to be set aside as incredible or when the trier of fact says that he would have made the same

6

determination even if the questioned circumstances had been different from what he thought them to be and he gives an adequate reason for that back-up position. In either of those situations it would be inconceivable for the trier of fact to have made a different finding on credibility, and if so the finding stands despite the flaws in his analysis." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (internal citation omitted). In other words, the harmless error standard is not the same as the substantial evidence standard. Moreover, as explained already, the error in this case formed a meaningful part of the ALJ's credibility determination. And, as addressed below, the ALJ in this case made other errors that undercut the Commissioner's contention that substantial evidence supports the ALJ's decision. Therefore, the Court cannot find that the ALJ's error in ignoring Claimant's objection to appearing by VTC was harmless.

**B.     The ALJ Failed To Support Her RFC Determination With Substantial Evidence**

Claimant argues the ALJ erred because she failed to identify an evidentiary basis that supported her finding that he retained the RFC to perform work at all exertional levels. An ALJ must explain how she reached her conclusions about a claimant's physical capabilities and build an "accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at 544; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The ALJ must identify some record basis to support the RFC finding. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). [She] is not allowed to "play doctor" by using her own opinions to fill an evidentiary gap in the record. *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). Specifically, Claimant asserts that once the ALJ rejected the medical opinions of the state agency medical consultants and Claimant's treating physician, Edwin Hollins, M.D., she was left with an evidentiary deficit that she was not permitted to fill with her own lay understanding of the medical evidence. (Claimant's Mem. at 10). The Court agrees with Claimant.

7

The ALJ first rejected the July 2013 medical determination of reviewing consultant Jack Bankhead, M.D., which stated that Claimant was limited to light exertional work with postural limitations, reasoning that it was unsupported by the record. (R. 27.)[3]

Dr. Bankhead's determination was based, in part, on a May 2013 medical opinion written by Fauzia Rana, M.D. (R. 317–20.) Claimant had presented to Dr. Rana with complaints of low back pain following a car accident in 2009 and left hand pain following a stabbing when he was younger. (R. 317.) Dr. Rana noted that Claimant experienced pain on full flexion of his lumbar spine and opined that he suffered from degenerative arthritis. (R. 319.) She reported that Plaintiff would encounter mild difficulty hopping on one leg, but had no other signs of significant limitation. (*Id.*)

Dr. Bankhead also considered Claimant's Function Report from May 2013, where Claimant reported that he suffered from arthritis in his hands, knees, and back. (R. 65, 239.) After he reviewed Claimant's records, Dr. Bankhead opined that Claimant could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand or walk for six hours in an eight-hour work day, and sit for about six hours in an eight-hour workday. (R. 64.) He also opined Claimant would be limited to frequent[4] climbing of ladders, ropes, and scaffolds. (*Id.*)

In her decision, the ALJ rejected Dr. Bankhead's RFC determination, stating that it was based on Claimant's lumbar impairment, which later medical evidence indicated was non-severe. (R. 58.)[5]

---

[3] In her opinion, the ALJ refers to this medical consultant as David Mack, M.D., (R. 27.); however, the medical evidence indicates this report was signed by Jack Bankhead, M.D. (R. 64.)

[4] As opposed to "unlimited" climbing of ladders, ropes, and scaffolds.

[5] The ALJ does not point to a specific medical record to support this assertion; however, in his report dated February 24, 2014, Dr. Hollins noted that Claimant's back and musculoskeletal system were normal. (R. 356.)

8

The ALJ then rejected the RFC determination of reviewing medical consultant Calixto Aquino, M.D., which stated Claimant had no severe impairments. (R. 108–09.) Although he completed his determination in May 2014, Dr. Aquino did not consider the April 2014 medical report of Dr. Hollins, which noted Claimant had presented with complaints of pain in his left shoulder (R. 101–03, 343.), or the April 2014 medical report of Dr. Dore DeBartolo, D.O., which stated Claimant suffered from tendinitis in his left hand. (R. 382.) Because Dr. Aquino's determination did not include these medical findings, the ALJ discredited his RFC finding and accorded it little weight. (R. 27.)

The ALJ then rejected the RFC determination of Claimant's treating physician, Dr. Hollins. (R. 27–28.) Claimant first presented to Dr. Hollins in February 2014 for a comprehensive medical examination, then returned to him in April 2014 with complaints of left shoulder pain and right foot pain. (R. 343, 354–56.) Upon examination, Dr. Hollins noted that Claimant had a one inch tender nodule on his right sole, but that he was able to walk. (R. 343–44.) He then diagnosed him with left shoulder pain and right foot pain. (*Id.*)

On July 16, 2014, Claimant returned to Dr. DeBartolo for a follow-up and to review a magnetic resonance imaging ("MRI") of his left shoulder that was taken in April 2014. (R. 379, 383.) Claimant reported that his shoulder pain was throbbing, aching, and burning in nature and that it radiated to his arm. (R. 379.) Dr. DeBartolo examined Claimant's left and right shoulders. (R. 380.) He noted that Claimant's left shoulder external rotation was seventy degrees, his abduction was 120 degrees, and that he experienced pain with end range motion. (*Id.*) Claimant's right shoulder was normal. (*Id.*) The MRI revealed that Claimant had a partial tear in his left rotator cuff and tendonitis in his biceps. (R. 380, 383.) To treat, Dr. DeBartolo

provided Claimant with steroid injections in his left shoulder and instructed him to begin physical therapy. (R. 381.)

Claimant saw Dr. Hollins again on July 18, 2014, at which time he was diagnosed with a left rotator cuff tear. (R. 376.) Dr. Hollins noted that Claimant was instructed to start physical therapy and discussed the importance of regular exercise with Claimant. (*Id.*) On that same day, Dr. Hollins completed a physical RFC questionnaire where he notably opined Plaintiff could not sit or stand for more than one hour at a time and could not sit or stand for more than two hours total in any workday. (R. 369–70.) He also opined Claimant could not reach, including overhead, at any time with either arm, must be able to shift between sitting, standing, or walking positions at will, and would miss more than four work days per month due to his impairment. (R. 370-71.)

The ALJ rejected Dr. Hollins findings due to perceived inconsistency with the record. Specifically, the ALJ found it inconsistent that Claimant complained of a nodule in his right foot that caused him pain on weight bearing, but at the same appointment, Dr. Hollins noted that he was "able to walk." (R. 27.) She also found that Dr. Hollins' determination that Claimant could not reach overhead with either arm was unsupported by the evidence, specifically Dr. DeBartolo's July 2014 examination, which revealed Claimant had no range of motion issues with his right arm. (R. 28.) Next, the ALJ took issue with Dr. Hollins' determination that Claimant would be unable to work more than four days per month because no records indicated that he was attending physical therapy for his shoulder pain; however, Dr. Hollins' determination did not indicate physical therapy as the reason Claimant would be absent from work. (R. 28, 371.) The ALJ mistakenly read Dr. Hollins' note that said he educated Claimant on the importance of regular exercise to say Claimant himself reported that he was exercising regularly, and found that

10

it was inconsistent with his complaints of right foot pain. (R. 28.) After examining this evidence, the ALJ rejected Dr. Hollins' RFC determination and gave it little weight.

Under the regulations, an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." SSR 96-8p at *7. If an ALJ fails to support her RFC conclusions the "omission itself is enough to warrant reversal." *Briscoe*, 425 F.3rd at 352. The Court does not find that the ALJ should have given controlling or significant weight to the opinions of Dr. Bankhead, Dr. Aquino, or Dr. Hollins. Once the ALJ discounted their opinions, however, she was left with an evidentiary record that did not support her RFC determination. Without the RFC determinations from the two State agency consultants and Claimant's treating physician, all that remained of the record were Claimant's treatment notes, test results, and state agency mental RFC evaluations. *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012). None of these sources provided an opinion regarding Claimant's RFC. Thus, by rejecting the available RFC determinations, the ALJ created an evidentiary gap in the record.

Once the ALJ found that the available RFC determinations "were insufficient and unsupported by the medical evidence in the record, [she] had a duty to conduct an appropriate inquiry to fill that gap." *Daniels*, 854 F. Supp. 2d at 523. While the Court recognizes that Claimant bears the burden of proof to demonstrate he is disabled, the ALJ also has a duty to fully and fairly develop the record. *Nelms*, 553 F.3d at 1097. If the ALJ found that the available medical evidence in Claimant's record was insufficient to make an RFC determination, it was her "responsibility to recognize the need for additional medical evaluations." *Scott*, 647 F.3d at 741. The ALJ could have re-contacted Claimant's treating doctors for a medical opinion, sent him for an independent medical evaluation, or requested a medical expert testify. *See Skinner v.*

11

*Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) ("ALJs may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability. . . ."); *Daniels*, 854 F. Supp. 2d at 523 ("the ALJ could have—and must on remand—fill in the evidentiary deficit either by seeking further information . . . or obtaining the opinions of an independent examining physician or a medical expert"). What she could not do, however, was "play doctor" and fill the gap with her own medical determination that Claimant retained the RFC to perform work at all exertional levels.

For the reasons stated above, the ALJ failed to build a logic bridge between the evidence and her determination, *Berger*, 516 F.3d at 544, and failed to identify a record basis for her RFC finding. *Scott*, 647 F.3d at 740. Thus, the Court finds that a remand is necessary due to the evidentiary deficit created by the ALJ's rejection of Claimant's available medical opinions. *See Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010) (finding remand was necessary after the ALJ created an evidentiary deficit when the ALJ rejected the opinion of the claimant's treating physician and then made an RFC finding without sufficient medical support in the record).

Claimant has identified other errors that must be corrected on remand. In her decision, the ALJ stated that it would be a reasonable accommodation to limit Claimant to no more than frequent pulling/pushing or reaching overhead. (R. 26.) To support her finding, the ALJ cited evidence from Claimant's July 2014 examination with Dr. DeBartolo which demonstrated he had good strength in his upper left extremity, but ignored evidence from the same examination which showed Claimant's left shoulder external rotation was seventy degrees and his abduction was 120 degrees. (R. 380.) She also failed to discuss evidence from Dr. Hollins' report, written two days after Dr. DeBartolo's, which indicated Claimant could never reach overhead. (R. 370.) It

12

is well-established that an ALJ may not "cherry-pick" favorable evidence to support her opinion and ignore unfavorable evidence. *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). In her decision, the ALJ failed to explain how Claimant's left shoulder rotation and abduction limitations would affect his ability to pull/push and reach overhead. Furthermore, the Seventh Circuit has held that an ALJ errs when she finds that a claimant is capable of performing a postural activity when objective evidence determines that claimant is unable to perform that postural activity. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (stating that the ALJ erred when the ALJ relied on a medical opinion that stated claimant could stoop, kneel, crouch, and crawl when objective medical evidence found she was unable to squat and had fifty degrees of flexion in her back). On remand, the ALJ must address both the favorable and unfavorable evidence that is significant to Claimant's disability claim and ground her findings in the evidence when assessing the degree of Claimant's impairment.

The ALJ also failed to address the impact of Claimant's April 2014 MRI which revealed he had a left rotator cuff tear as well as tendonitis in his biceps. While an ALJ is not required to address "every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The Seventh Circuit has stated that an ALJ's decision must address significant evidence in the record that would support the opposite conclusion so that the reviewing court can trace the ALJ's path of reasoning. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Because the ALJ rejected all the available medical RFC determinations and failed to sufficiently address the Claimant's objective records regarding his left shoulder, the Court is unable to discern how the ALJ reached her determination regarding the degree of Claimant's impairment. Thus, we must reverse and remand for further proceedings.

### C. On Remand, the ALJ should Re-Evaluate Claimant's Credibility

Because this Court has concluded that the Commissioner's decision requires reversal for the reasons discussed above, the Court need not address Claimant's alleged error regarding credibility at this time. The Court notes, however, that the Administration recently updated its guidance about evaluation symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p.

### IV. CONCLUSION

For the reasons stated in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment (ECF No. 12) is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with the Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 7, 2017